# Exhibit A

State Court Documents, Plaintiff's Complaint No. CV21946368.

NAILAH K. BYRD
1200 Ontario
Cleveland, OH 44113

Case# CV21946368

RETURN RECEIPT REQUESTED ELECTRONICALLY



9314 8001 1300 3544 5686 25

G4S SECURE SOLUTIONS USA
PRENTICE-HALL CORP. SYSTEM INC.S/A
50 WEST BROAD STREET, SUITE 1330
COLUMBUS OH 43215

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV21946368 | D1 CM | 44162730 |

Rule 4 (B) Ohio

Rules of Civil Procedure

# SUMMONS

TERRIO NORRIS
VS
G4S SECURE SOLUTIONS USA  ET AL.

**PLAINTIFF**

**DEFENDANT**

G4S SECURE SOLUTIONS USA
PRENTICE-HALL CORP. SYSTEM INC.S/A
50 WEST BROAD STREET, SUITE 1330
COLUMBUS OH 43215-0000

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



**Plantiff's Attorney**

ANDREW D. PAPPERT
25200 CHAGRIN BLVD, SUITE 200

BEACHWOOD, OH 44122

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

JOAN SYNENBERG
Do not contact judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD
Clerk of the Court of Common Pleas


By_____
Deputy

| DATE SENT |
|---|
| Apr 14, 2021 |

COMPLAINT FILED  04/13/2021

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

New Case Electronically Filed: COMPLAINT
April 13, 2021 19:44

By: ANDREW D. PAPPERT 0093964

Confirmation Nbr. 2227644

TERRIO NORRIS

vs.

G4S SECURE SOLUTIONS USA ET AL.

CV 21 946368

Judge: JOAN SYNENBERG

Pages Filed: 15


IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| TERRIO NORRIS<br>9702 Yale Ave.<br>Cleveland, Ohio 44108<br>   Plaintiff,<br><br>  v.<br><br>G4S SECURE SOLUTIONS USA<br>1395 University Blvd.<br>Jupiter, FL 33458<br><br> **Serve also:**<br> THE PRENTICE-HALL<br> CORPORATION SYSTEM, INC.<br> Statutory Agent<br> 50 West Broad STREET<br> SUITE 1330<br> COLUMBUS OH 432154114<br><br> -and-<br><br>ART (Last Name Unknown)<br>c/o G4S SECURE SOLUTIONS USA<br>6500 Rockside Road<br>Independence, Ohio 44131<br><br>   Defendants. | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Terrio Norris, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

### PARTIES AND VENUE

1. Norris is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. Upon information and belief Art Last Name Unknown is a resident of the state of Ohio.

3. Despite reasonable attempts to learn the last name of Art, his identity could not be learned before the filing of the Complaint.



4. G4S Secure Solutions USA is a foreign corporation with its principal place of business located at 1395 University Blvd. Jupiter, Florida 33458.

5. At all times relevant herein G4S is licensed to do business in Ohio.

6. G4S operates a location at 6500 Rockside Road Independence, Ohio 44131.

7. Art was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at G4S who acted directly or indirectly in the interest of G4S.

8. Art was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

9. All of the material events alleged in this Complaint occurred in Cuyahoga County.

10. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1) and (4).

11. Venue is proper pursuant to Civ. R. 3(C)(3) & (6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Norris is a former employee of G4S.

14. Norris began working at G4S on or around October 24, 2018.

15. Art did not participate in the decision to hire Norris.

16. Norris is female.

17. Norris is African American.

18. Norris worked as a security guard for G4S.

19. Art did not participate in the decision to hire Norris.

20. Art is employed by G4S.

21. Art is employed by G4S as a supervisor.



22. Art is male.

23. Art is Caucasian.

24. G4S assigned employees to locations at the Port of Cleveland.

25. G4S assigned Norris to work at the Port of Cleveland.

26. Norris is one of two African Americans who G4S assigned to work at the Port of Cleveland.

27. Don Last Name Unknown is an employee of G4S.

28. Don is male.

29. Don is Caucasian.

30. G4S employs Don as a security guard.

31. G4S stations Don at the Port of Cleveland.

32. Don and Norris worked together at the Port of Cleveland.

33. Don and Norris' shifts would overlap at the Port of Cleveland.

34. On or around October 24, 2018 Don began to harass Norris.

35. During the course of Norris' employment Don made racial comments to Norris.

36. During the course of Norris' employment Don sexually harassed Norris.

37. During the course of Norris' employment Don made comments to Norris such as "I like big women."

38. During the course of Norris' employment Don made comments to Norris such as "I like black women."

39. During the course of Norris' employment Don made comments to Norris such as "you have a nice box."

40. During the course of her employment Don had suggestively said to Norris "I like my coffee with sugar and cream." ("Sugar and Cream Comment.")



41. When Don made the Sugar and Cream Comment he looked up and down Norris' body.

42. The Sugar and Cream Comment was a sexual innuendo.

43. Don made the coffee comment based on Norris' skin color.

44. On February 5, 2019 Norris was running late for work.

45. On February 5, 2019 Norris informed Dave Christian that she would be late for work.

46. Christian was Norris's supervisor.

47. Christian is male.

48. Christian is Caucasian.

49. Christian told Norris to "be on time tomorrow."

50. On February 5, 2019 Christian did not discipline Norris for being tardy.

51. On February 8, 2019 Norris started work at or around 8:00am.

52. On February 8, 2019 Christian sent Norris home at 10:15am.

53. On February 8, 2019 Christian sent Norris home before she completed her shift. ("Early Dismissal.")

54. Christian's stated reason for the Early Dismissal was that there were no more trucks scheduled to arrive on February 8, 2019.

55. On February 8, 2019 there were trucks scheduled to arrive at G4S's checkpoint after 10:15am.

56. Norris knew that there were trucks scheduled to arrive after 10:15am on February 8, 2019.

57. Norris asked Christian why she was being sent home during the Early Dismissal Incident.

58. Christian again told Norris to go home.

59. Christian then told Norris that the reason for the Early Dismissal was that higher ups wished to speak to Norris.



60. During the Early Dismissal Incident Christian told Norris that she had a meeting scheduled for February 11, 2019.

61. Christian did not inform Norris of the nature of the meeting.

62. Christian did not inform Norris of the reason for the meeting.

63. On February 11, 2019 Norris met with Art. ("February Meeting.")

64. At the February Meeting Art told Norris that another employee had overheard Norris swearing at Christian.

65. Norris did not swear at Christian.

66. At the February Meeting Art told Norris that another employee had overheard Norris claiming that Christian did not care about Norris' children.

67. Norris has 1 child.

68. Norris' child is 28 years old.

69. Norris does not reside with her child.

70. Norris' child is not dependent upon Norris.

71. Norris did not claim that Christian does not care for her child.

72. Norris did not claim that Christian does not care for her child because Norris' child is no longer dependent upon her.

73. The accusation that Norris claimed that Christian does not care about her children does not make logical sense.

74. During the February Meeting Norris informed Art that she was being sexually harassed by Don.

75. During the February Meeting Norris informed Art of sexual comments made by Don.

76. During the February Meeting Norris informed Art that Don was discriminating against Norris based on her race.



77. During the February Meeting Norris informed Art of the racial comments made by Don.

78. During the February Meeting Norris informed Art of the Sugar and Cream Comment.

79. During the February Meeting Norris informed Art that when Don made the Sugar and Cream Comment Don looked up and down Norris' body.

80. When an employee reports sexual harassment an employer should investigate the reported harassment.

81. When an employee reports racial discrimination an employer should investigate the reported discrimination.

82. During the February Meeting Norris reported sexual harassment to Art.

83. During the February Meeting Norris reported racial discrimination to Art.

84. During the February Meeting Norris reported significant workplace incidents to Art.

85. Defendants did not investigate the sexual harassment Norris reported.

86. Defendants did not investigate the racial discrimination Norris reported.

87. Defendants did not get written statements from all participants regarding Norris's complaints of sexual harassment.

88. Defendants did not get written statements from all participants regarding Norris's complaints of racial discrimination.

89. Defendants did not get written statements from all witnesses regarding Norris's complaints of sexual harassment.

90. Defendants did not get written statements from all witnesses regarding Norris's complaints of racial discrimination.

91. Defendants did not take recorded statements from all participants regarding Norris's complaints of sexual harassment.



92. Defendants did not take recorded statements from all participants regarding Norris's complaints of racial discrimination.

93. Defendants did not take recorded statements from all witnesses regarding Norris's complaints of sexual harassment.

94. Defendants did not take recorded statements from all witnesses regarding Norris' complaints of racial discrimination.

95. Defendants' failure to fully investigate Norris' sexual harassment complaint was an adverse action against Norris.

96. Defendants' failure to fully investigate Norris' racial discrimination complaint was an adverse action against Norris.

97. When an employee makes a complaint of sexual harassment an employer should take action with respect to the harasser.

98. When an employee makes a complaint of racial discrimination an employer should take action with respect to the discriminator.

99. Art disregarded Norris's Discrimination Complaints and failed to take any action with respect to Don.

100. Don was not given a verbal warning as a result of his discriminatory remarks to Norris.

101. Don was not given a written warning as a result of his discriminatory remarks to Norris.

102. Don's employment at G4S was not suspended as a result of his discriminatory remarks to Norris.

103. Don's employment at G4S was not terminated as a result of his discriminatory remarks to Norris.

104. An employer should not terminate an employee for reporting sexual harassment.



105. An employer should not terminate an employee for reporting racial discrimination.

106. At the February Meeting Art terminated Norris.

107. Art terminated Norris after Norris complained of sexual harassment.

108. Art terminated Norris after Norris complained of racial discrimination.

109. Art terminated Norris without investigating her claims of sexual harassment.

110. Art terminated Norris without investigating her claims of racial discrimination.

111. At the February Meeting Norris was terminated and informed the reason for her termination was for allegedly swearing at Christian.

112. At the February Meeting Norris was terminated and informed the reason for her termination was for allegedly claiming that Christian does not care about her child.

113. Norris had not sworn at Christian.

114. Norris had not claimed that Christian does not care about her child.

115. Upon information and belief, G4S has a progressive disciplinary policy.

116. If an employer has a progressive disciplinary policy, they should apply it to all employees equally.

117. Upon information and belief, G4S' disciplinary policy calls for escalating levels of discipline for infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

118. Norris did not receive a verbal warning.

119. Norris did not receive a written warning.

120. Norris did not receive a second written warning.

121. By terminating Norris, G4S violated its own progressive discipline policy.

122. G4S' purported reason for Norris' termination is pretext for sex discrimination.



123. G4S' purported reason for Norris' termination is pretext for race discrimination.

124. On or about February 11, 2019 Norris was actually terminated in retaliation for reporting sexual harassment.

125. On or about February 11, 2019 Norris was actually terminated in retaliation for reporting sexual harassment.

126. Upon information and belief, G4S permitted similarly situated, male employees to retain their employment despite having attendance issues that were similar to or worse than Norris's.

127. Upon information and belief, G4S permitted similarly situated, white employees to retain their employment despite having attendance issues that were similar to or worse than Norris's.

128. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Norris.

129. As a result of being constantly harassed and insulted on the basis of sex during her employment at G4S, and being wrongfully terminated from G4S, Norris has suffered severe emotional distress, anxiety, and depression.

130. As a result of being constantly harassed and insulted on the basis of race during her employment at G4S, and being wrongfully terminated from G4S, Norris has suffered severe emotional distress, anxiety, and depression.

131. The above facts demonstrate that Defendants engaged in a pattern and practice of sexual harassment.

132. The above facts demonstrate that Defendants engaged in a pattern and practice of race discrimination.

133. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

134. There was a causal connection between Norris' race and Defendants' termination of Norris.



135. There was a causal connection between Norris' race and Defendants' termination of Norris.

136. There was a causal connection between Norris's race discrimination complaint and Defendants' termination of Norris.

137. There was a causal connection between Norris's sexual harassment complaint and Defendants' termination of Norris.

## COUNT I:  SEXUAL HARASSMENT

138. Norris restates each and every paragraph of this Complaint as though it were fully restated herein.

139. Norris was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

140. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

141. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Norris reported the sexual harassment to her supervisor both verbally.

142. When Norris reported the sexual harassment to her supervisor a secretary was present.

143. When Norris reported the sexual harassment to her supervisor the report was recorded by the secretary.

144. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of O.R.C. §4112.02(A).

145. Don's sexual harassment of Norris occurred while she was acting in the course and scope of her employment as a security guard.



146. Norris supervisor had knowledge of Don's sexual harassment and failed to take any corrective or remedial action.

147. Norris suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

148. As a direct and proximate result of Defendants' conduct, Norris has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT II: GENDER DISCRIMINATION

149. Norris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

150. Norris is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

151. Defendants treated Norris differently than other similarly situated employees based on her gender.

152. Defendants discriminated against Norris on the basis of her gender throughout her employment with the company.

153. Defendants terminated Norris's employment without just cause.

154. Defendants terminated Norris's employment based on her gender.

155. Defendants' discrimination against Norris based on her gender violates R.C. § 4112.01 *et seq*.

156. Norris suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

157. As a direct and proximate result of Defendants' conduct, Norris suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.



### COUNT III: RACE DISCRIMINATION

158. Norris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

159. Throughout her employment, Norris was fully competent to perform her essential job duties.

160. Art treated Norris differently than other similarly situated employees based on her race.

161. Art violated Ohio Revised Code § 4112.02(A) *et seq.* by discriminating against Norris due to her race.

162. On or about February 11, 2019, G4S terminated Norris without just cause.

163. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

164. Defendants terminated Norris based on her race.

165. Defendants violated O.R.C. § 4112.01 et. seq. when they terminated Norris based on her race.

166. Norris suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

167. As a direct and proximate result of Defendants' conduct, Norris has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: RETALIATION

168. Norris restates each and every prior paragraph of this complaint, as if it were fully restated herein.

169. As a result of the Defendant's discriminatory conduct described above, Norris complained about the sexual harassment she was experiencing.

170. As a result of the Defendant's discriminatory conduct described above, Norris complained about the race discrimination she was experiencing.



171. Subsequent to Norris reporting of sexual harassment to Art, Norris was terminated.

172. Subsequent to Norris reporting of race discrimination to Art, Norris was terminated.

173. Defendant's actions were retaliatory in nature based on Norris 's opposition to the unlawful discriminatory conduct.

174. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

175. Norris suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

176. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Norris, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Norris demands from Defendants the following:

(a) Issue an order requiring G4S to restore Norris to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Norris for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Norris' claims as allowable under law;



(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

> Respectfully submitted,
>
> Brian D. Spitz (0068816)
> Andrew D. Pappert (0093964)
> **THE SPITZ LAW FIRM, LLC**
> 25200 Chagrin Boulevard, Suite 200
> Beachwood, OH 44122
> Phone: (216) 291-4744
> Fax:   (216) 291-5744
> Email: brian.spitz@spitzlawfirm.com
>        drew.pappert@spitzlawfirm.com
>
> *Attorneys For Plaintiff*



## JURY DEMAND

Plaintiff Terrio Norris demands a trial by jury by the maximum number of jurors permitted.

_____
Andrew D. Pappert

U.S. POSTAGE >> PITNEY BOWES

ZIP 44102 $ 006.46
02 4W
0000367348 APR 14 2021